IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 10-800-01 |
| BARRETT BYRON STATON | : | |

**SURRICK, J.**                                                                                          JUNE __14__, 2012

## MEMORANDUM

Presently before the Court is Defendant Barrett Byron Staton's Motion for Return of Property. (ECF No. 108.) For the following reasons, the Motion will be denied.

**I.    BACKGROUND**

    **A.    Procedural History and Factual Background**

The factual background of this action is set forth in the Court's June 5, 2012 Memorandum and Order granting the Government's Motion *in Limine* to Admit Evidence Regarding Defendant Barrett Byron Staton's Bank Records and Income Tax Returns (ECF Nos. 116, 117) and the Court's June 8, 2012 Memorandum and Order denying Defendant Barrett Byron Staton's Motion to Compel Disclosure of Grand Jury Minutes and Testimony and Motion to Dismiss Indictment (ECF Nos. 120, 121). Those Memoranda and Orders describe in detail the fraudulent scheme in which the Government alleges that Defendant was involved.

Essentially, Defendant, with co-defendants Matthew Staton and William Haken, Jr. (collectively, "Defendants"), would use various office copier brokerage businesses ("Businesses") to entice small businesses and non-profit organizations ("Customers") into executing new office copier leases by making attractive promises. Defendants did not fulfill these promises. They were supposed to use the payments received from the financing companies

as a result of the new leases for the Customers' benefit (*e.g.*, to pay off their office copier leases). However, the payments were instead used for personal expenses. When Defendants became overwhelmed with complaints from the Customers, they would shut down the Business, only to reopen it under a different company name, and at times, under a nominee owner. Defendant Barrett Byron Staton also used the Businesses to obtain financing for personal purchases that included luxury vehicles. On April 11, 2012, co-defendant Haken entered a plea of guilty. (*See* ECF No. 83 (Minute Entry).)

Defendants Barrett Byron Staton and Matthew Staton have filed several pretrial discovery motions. (*See* ECF Nos. 87, 89, 92, 93, 95.)[1] On May 30, 2012, Defendant Barrett Byron Staton filed the instant Motion for Return of Property. (Def.'s Mot., ECF No. 108.)[2]

B.  **Relevant Facts Concerning the Seized Evidence**

The federal investigation into Barrett Byron Staton and Matthew Staton commenced in March 2004, after the owner of a printing business located in Virginia made a formal complaint to the Federal Bureau of Investigation ("FBI"). (Gov't's Resp. 2, ECF No. 122.) The

---

[1] In addition to these pretrial discovery motions, the Government has filed a Motion in Limine to admit Defendant Barrett Byron Staton's bank records and income tax evidence. (ECF No. 96.) That Motion was granted by Memorandum and Order dated June 5, 2012. (ECF Nos. 116, 117.) Defendants Barrett Byron Staton and Matthew Staton have filed a motion for severance. (ECF Nos. 91, 98.) That Motion was denied by Memorandum and Order dated June 12, 2012. (ECF Nos. 124, 125.) Defendant Barrett Byron Staton has filed a Motion to Reimburse Travel Expenses (ECF No. 100), and very recently, a Motion for Leave to File Motion to Suppress Evidence and a Motion to Suppress Evidence (ECF Nos. 118, 119).

On May 9, 2012, Defendant Matthew Staton filed a document, titled "Pre-Trial Motions," in which he requested to join in all of his co-defendants' pretrial motions. (ECF No. 98 at ¶ 3.) The instant Motion applies only to Defendant Barrett Byron Staton. Accordingly, Matthew Staton lacks standing with respect to this Motion.

[2] Defendant has not requested a hearing for this Motion.

Pennsylvania state police also contacted the FBI about similar complaints involving Barrett Byron Staton (hereinafter, "Defendant") and one of the Businesses involved, Access Business Solutions, Inc. ("ABS"). (*Id.*)  A multi-year investigation spanning multiple states ensued.  Over the course of the investigation, two search warrants were executed against Defendant. (*Id.*)

1. *2004 Search Warrant*

On May 18, 2004, agents of the FBI and officers of the Plymouth Township Police Department and New Hanover Township Police Department executed a search warrant at the home of Defendant, located at 415 Windy Hill Road, Gilbertsville, Pennsylvania. (Def.'s Mot. ¶ 1.)  A computer was removed from Defendant's home. (*Id.* at ¶ 2.)

On May 19, 2004, a search warrant was executed at a self-storage unit, located at 415 West Ridge Pike, Limerick, Pennsylvania. (*Id.* at ¶ 3.)  Compact discs ("CDs") belonging to ABS and "various other documents" were seized. (*Id.*)

On May 21, 2004, pursuant to a request by an Assistant United States Attorney in the District of Delaware, the computer, the CDs and the "various other documents" that had been seized on May 18 and May 19, respectively, were released to the custody of the FBI. (*Id.* at ¶ 4.)  These items have since remained in the custody and control of the Government. (*Id.* at ¶ 5.)

2. *2008 Search Warrant*

On September 26, 2008, pursuant to a search warrant, items were seized from Defendant's home, located at 532 Oak Lane, Lititz, Pennsylvania, and a stand-alone garage located at this address. (*Id.* at ¶¶ 6-7.)  The items that were seized were:  (1) a Grey Averatec Laptop, 3260 series; (2) a Dell CPU, Serial No. X-10-60256-00045-599-844-596; (3) a Dell CTU, Serial No. CP 384-00144-348-171-542; (4) a Dell CPU, Serial No. BSB 481-J4BG1C-

6H6C6-KPUFR-FCR4F-2MXFB; (5) "Various CD's"; and (6) a "Number of USB units." (*Id.* at ¶ 8.) These items have since remained in the custody and control of the Government. (*Id.* at ¶ 9.)

### 3. Discovery Issues

In 2004 and 2008, FBI computer experts examined the computer hard drives and other electronic media devices that had been seized during the searches. (Gov't's Resp. 2.) The hard drives and electronic media devices contained documents, including internal office memoranda concerning, and business records showing, fraudulent deals and e-mails. The Government contends that these documents are relevant to the charges against Defendant and that the Government intends to use this evidence to prove its case at trial. (*Id.*)

After Defendant and his two co-defendants were indicted, the parties engaged in discovery. (*Id.*)[3] The Government invited Defendant's counsel to the United States Attorney's Office in Wilmington, Delaware to review the evidence. During the week of March 10, 2012, Defendant went to Wilmington to review the evidence seized in this case. Defendant's counsel and Defendant were shown the computer hard drives and other electronic media devices seized in this case. (Gov't's Resp. 2-3.)[4] At the conclusion of this review, the Government offered to copy any paper documents or computer data requested by Defendant. (*See* Gov't's Resp. Ex. A (Mar. 16, 2012 e-mail from Defendant's counsel to Government indicating specific items that

---

[3] In his Motion for Leave to File Motion to Suppress, Defendant states that he "moved to [the Florida] area some three years or more before the filing of the instant Indictment." (ECF No. 118 at ¶ 9.) Defendant currently resides in Florida. (*Id.*)

[4] The Government advises that it made the materials available to Defendants for the entire week of March 10, 2012. Defendants elected to inspect these items only over the course of three days. (Gov't's Resp. 3 n.1.)

counsel identified and wanted copied).)

On April 26, 2012, Defendant requested that the Government provide him with an imaged copy of the seized materials. (Gov't's Resp. 3.) On April 27, 2012, the Government indicated to Defendant's counsel that if he wanted an imaged hard drive containing data of the material seized during the 2004 and 2008 searches, he would have to send the Government a hard drive. (*See* Gov't's Resp. Ex. B (Apr. 27, 2012 e-mail from Government to Defendant's counsel stating same).) On May 2, 2010, Defendant's counsel provided the Government with two hard drives so that the Government could copy onto each hard drive copies of the materials seized during the searches. (*See* Gov't's Resp. Ex. C (May 2, 2012 e-mail from Defendant's counsel to Government indicating intention to provide hard drives to Government "in the next day or so").) On May 10, 2012, the Government provided Defendant's counsel with imaged hard drives[5] containing the data of the items seized during the 2004 and 2008 searches. (Gov't's Resp. Ex. D (May 11, 2012 e-mail from Defendant's counsel to Government indicating that Defendant had received the imaged hard drives for his review on May 10, 2012).) Pursuant to Defendant's counsel's request, the Government also provided him with a copy of the word search used by the Government's computer expert. (*See* Gov't's Resp. Ex. C.)

On May 11, 2012, Defendant's counsel informed the Government that he and Defendant could not access the data on these imaged hard drives. (*See* Gov't's Resp. Ex. D (May 11, 2012 e-mail from Defendant's counsel to Government noting that the imaged hard drives did not have

---

[5] "Imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Imaging is necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction." (Gov't's Resp. 3 n.2.)

accessible materials on them and that while "[t]here are files, [] you can't get into the files. There is also gibberish which I don't understand.").) Defendant's counsel offered to bring one of the hard drives to the Government for inspection. Counsel noted that he was forwarding the other hard drive to Defendant's expert so that he could have access and physical custody over it. Defendant's counsel also requested "[a]ny guidance that [the Government] and [its] technical people could give us." (*Id.*)

The parties conferred to resolve the issue of accessing the materials. (Gov't's Resp. 3.) On May 17, 2012, the Court held a status conference on this issue. After this conference, the Government provided Defendant with three manuals produced by the Department of Justice to show Defendant and his computer experts how to download and use free forensic software available on the Internet. (*Id.*) This software would allow Defendant access to the data stored on the imaged hard drives. (*Id.* at 3-4 & Ex. E (May 18, 2012 e-mail from Government to Defendant's counsel attaching "three free forensic software programs that may allow you to view the data on the hard drive").) These manuals are commonly used in the Eastern District of Pennsylvania to resolve the types of data accessibility issues encountered in this case. (Gov't's Resp. 4.)

Defendant's counsel claimed that he still could not access the data on the imaged hard drives. (*Id.* at 4.) On May 24, 2012, the Government provided Defendant's counsel with a Government-issued laptop, pre-loaded with the free forensic software, that permitted Defendant to view the data contained on the imaged hard drives. (*Id.* at 4 & Ex. F (May 24, 2012 e-mail from Government to Defendant's counsel noting that the laptop had been tested and that "everything is working appropriately," and noting that the laptop would be delivered to

Defendant's counsel's office on the afternoon of May 24, 2012, along with the hard drives); Def.'s Supp. Mem. 1 (on file with Court).) The Government told Defendant's counsel that he would still need to download some software programs, such as Microsoft Word or Excel, in order to view the data. (Def.'s June 1, 2012 Ltr. (on file with Court).)

Defendant's counsel contacted several information technology professionals to determine the availability and accessibility of such software programs. Defendant claims that even if he were to obtain these programs, "there is no guarantee at this point in time that the programs obtained will access all the files on the computers if all of the appropriate programs are not obtained." (Def.'s Supp. Mem. 2.) Defendant filed the instant Motion, pursuant to Federal Rule of Criminal Procedure 41(g), to "avoid that exercise" of obtaining the necessary software. (*Id.*)

On June 4, 2012, in response to the instant Motion, the Government held a discovery conference with Defendant's counsel. During this conference, the Government installed Microsoft Office software (*e.g.*, Microsoft Word, Excel and Powerpoint) onto the Government-issued laptop. The Government confirmed that the forensic software, in conjunction with the Microsoft Office programs, properly opened the data on the imaged hard drives. At the discovery conference, the Government could not access the Peachtree data files, since it did not possess the software required for opening those files. However, the Government placed trial Peachtree software on the laptop. (*See* Gov't's Resp. 4-5 & Ex. H (June 5, 2012 follow-up e-mail from Government to Defendant's counsel confirming that the Government had loaded the Microsoft Office programs onto the laptop; that an issue remained in viewing the documents that required Peachtree software; and that trial Peachtree software had been placed on the laptop).) Defendant still could not access the Peachtree data files on the imaged hard drives. (Gov't's

7

Resp. 4.)[6]

On June 6, 2012, Defendant's counsel notified the Government that it was successful in downloading the Peachtree data files onto a different computer. However, the free trial that had been installed on the Government-issued laptop did not allow for access to those files. (*See* Gov't's Resp. Ex. I (June 6, 2012 e-mail from Defendant's counsel to Government noting that Defendant still had no access to the Peachtree documents and that Defendant was exploring the possibility of purchasing the Peachtree program, although such possibility might be hindered by the fact that the program would have to be downloaded onto another computer, as the operating systems of the Government-issued laptop and the Peachtree program are incompatible).)[7]

On June 7, 2012, the Government purchased new computer software that permitted access to the Peachtree files. (Gov't's Resp. 5.) The Government immediately notified Defendant's counsel of this information and offered two options: (1) coming to the United States Attorney's Office in Wilmington, Delaware as soon as practical to inspect the Peachtree files, or (2) purchasing the same new software that the Government had purchased, and permitting the Government to install this software onto Defendant's Government-issued laptop to ensure that he

---

[6] The Peachtree data files relate to an accounting software program used by Defendant during the time frame charged in the Indictment. (Gov't's Resp. 4-5.)

[7] Specifically, the e-mail stated, in relevant part:

> We were successful in downloading [Defendant's counsel's] Peachtree information onto a different computer as opposed to the one [the Government was] able to provide. However, it appears that the free trial that we would have access to does not authorize to go back into pre-existing Peachtree documents. Simply gives you . . . an overview of Peachtree at the present time and using it in the establishment of new files.

(Gov't's Resp. Ex. I.)

8

had access to this data. (*Id.*)[8] The estimated cost for this software was $569.00. (Gov't's Resp. Ex. I.) On June 8, 2012, Defendant indicated that his counsel would inspect the Peachtree files on June 9, 2012 at the United States Attorney's Office. (Gov't's Resp. 5.)

## II. LEGAL STANDARD

Rule 41(g) states that:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g). When a motion for return of property is made while a criminal prosecution is pending, the burden is on the moving party to show why he is entitled to the property. *United States v. Davies*, No. 08-253, 2010 WL 3024844, at *6 (M.D. Pa. July 29, 2010) (citing *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999)). Generally, a Rule 41(g) motion will be denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband, or the government's need for the property as evidence continues. *Id.* (citing *Chambers*, 192 F.3d at 377 (citing *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991))). The burden shifts to the Government when the criminal proceedings have terminated. *Chambers*, 192 F.3d at 377. Rule 41(g) contemplates a "reasonableness" standard. *United States v. Korbe*, No. 09-0005, 2010 WL 2490690, at *4 (W.D. Pa. June 16, 2010); *see also Gov't of Virgin Islands v. Edwards*, 903 F.2d 267, 273 (3d Cir. 1990) (noting that the Advisory Committee Notes suggest that "reasonableness under all of

---

[8] Because the software purchased by the Government is licensed with limitations, the software may be used on one computer only. (Gov't's Resp. n.3.)

9

the circumstances must be the test when a person seeks to obtain the return of property").⁹

## III. DISCUSSION

Defendant seeks the return of all of the items seized during execution of the May 18 and May 19, 2004 and September 26, 2008 searches. (Def.'s Mot. ¶ 10.) He points out that none of the seized items are contraband. (*Id.* at ¶ 14.) Nor are the items illegal, or otherwise subject to forfeiture. (Def.'s Mem. 1-2, ECF No. 108.) He contends that the return of such property will enable Defendant to review the items "without the necessity of the intervention of the Government and its personnel or hiring outside personnel to access the review of the information contained on these devices." (Def.'s Mot. ¶ 13.) He argues that the Government no longer needs to retain these items since it "has examined said items and removed from them copies of any and all files it deemed necessary in furtherance of its investigation." (Def.'s Mem. 1.) Defendant argues that the Government "has the ability to make copies of the full contents of these computers, cds, floppy disks and thumb drives and retain control of the copies," and accordingly, will not be prejudiced by returning these items to Defendant. (Def.'s Mot. ¶¶ 12, 14.) Defendant argues that the Government has had "more than a reasonable time within which to derive from the items seized that which it sought." (Def.'s Mem. 2.)¹⁰ Defendant states that he will agree to

---

⁹ *United States v. Chambers* and *Government of Virgin Islands v. Edwards* refer to Federal Rule of Criminal Procedure 41(e). In 2002, Rule 41(e) was amended to become the present-day Rule 41(g). *Davies*, 2010 WL 3024844, at *6 n.1 (citing *United States v. Pantelidis*, 335 F.3d 226, 231 n.2 (3d Cir. 2003)).

¹⁰ In support of his argument, Defendant points out that the Government represented to the United States Magistrate Judge that if the "analyst determines that these items are no longer necessary to retrieve and preserve the data evidenced, the Government will return them within a reasonable period of time." (Def.'s Mem. 2 & Ex. A at ¶ 37(b) (Affidavit of Probable Cause in support of September 2008 search warrant).)

"any reasonable conditions that the Court deems necessary to protect access by the Government to this property or their use in later proceedings." (Def.'s Mot. ¶ 15.)

The Government responds that since providing Defendant with the imaged hard drives on May 10, 2012, it has provided Defendant's counsel with "a laptop computer, forensic software to review the computer data, access to other specialized software programs, and personalized instruction from government personnel on how to operate these software programs." (Gov't's Resp. 1.) It also contends that it has a reasonable need to retain the seized property, since the items contain evidence in the case for its prosecution in this case, and it needs to "preserve the integrity of the computer data contained inside these items." (*Id.*)

Defendant has not met his burden of proving why he is entitled to the return of his property at this juncture. The evidence contained in the materials seized include internal office memoranda concerning, and business records of, the fraudulent deals and e-mails that are directly relevant to the charges against Defendant. It is the Government's position that this evidence proves that Defendant had knowledge of the various fraudulent transactions at issue. It also shows that Defendant intended to defraud the Customers. Since the Government intends to use this evidence to prove its case at trial, its need for these materials remains ongoing in this case and the Motion will be denied. *Davies*, 2010 WL 3024844, at *6 (denying Rule 41(g) motion for return of property because, in part, the Government's need to use the property as evidence was still ongoing in the case); *see also United States v. Thomas*, 74 F. App'x 189, 192 (3d Cir. 2003) (affirming denial of Rule 41(e) motion since "[t]he Government's intent to use property as evidence is a continuing interest which can prevent return of property under Rule 41(e)"); *United States v. Kiderlen*, No. 05-721, 2006 WL 3079048, at *12 (E.D. Mo. Aug. 1, 2006) (denying

motion to return computer that had been lawfully acquired by the Government, even though the Government stated that it did not presently intend to offer the computer or its contents in its case-in-chief, since it could not say that the computer would ultimately be without evidentiary value or relevance); *cf. United States v. Bolze*, No. 09-93, 2011 WL 7052800, at *2 (E.D. Tenn. Dec. 22, 2011) (partially denying as moot motion to return financial documents, computers and currency, all of which the court found to be relevant to establishing the extent of defendant's financial crimes at a future sentencing hearing, if one were to occur).

Defendant cites the case *Government of Virgin Islands v. Edwards* for the proposition that the Government's continued retention of materials in this case is unreasonable. (Def.'s Mem. 1.) *Edwards* is inapposite. In *Edwards*, the Court reversed the district court's order denying the Rule 41(e) motion, with instructions to the district court to order the Government to return to Edwards the property taken from him, because the trial had ended and the Government had not suggested that the property was needed to aid it in any other investigation. *Edwards*, 903 F.2d at 272, 274. Here, by contrast, the materials of which Defendant seeks return are the very evidence that the Government needs in order to prove its case against Defendant. Since trial has not commenced in this case, the Government needs this evidence, and it needs to preserve the integrity of the data contained in these materials. If the Government were ordered to return the materials that it seized in 2004 and 2008 prior to trial, Defendant could destroy the data contained therein or create new data, then claim bad faith retention by the Government. Moreover, by maintaining custody and control over the materials that were seized in 2004 and 2008, the Government can ensure that the chain of custody for the data contained in these materials is preserved for trial.

Defendant claims that these materials are needed in order to properly present a defense at trial. However, Defendant had abundant opportunities, for months, to examine the documents, and he chose not to do so. Indeed, during a status conference held on January 27, 2012, which the Government and counsel for Defendant attended, the Government stated that it had in its offices in Wilmington, Delaware boxes of the materials that were seized during the 2004 and 2008 searches. The Government has consistently indicated its willingness to allow Defendant access to these materials for his inspection.

Moreover, the Government has met, and exceeded, its obligations to allow Defendant access to the materials. It has provided Defendant with two hard drives containing the data of the seized materials. Based on the evidence presented with respect to this Motion, it appears that whenever Defendant notified the Government that he could not access the data, the Government took steps to resolve the issues. Indeed, the Government provided Defendant with a laptop, installed forensic software, and, through his counsel, directed Defendant on how to obtain other software necessary to access the data. The Government even purchased new accounting software so that Defendant could access its own Peachtree accounting files.[11]

This is not a situation in which the Government has hindered Defendant's access to the materials that were seized, or has only allowed access to the materials at the eve of trial. The facts clearly point to the contrary. The Government has made these materials available to the defense for at least the last five months. It is Defendant who has not taken advantage of the

---

[11] Defendant claims that these Peachtree accounting files are significant to his defense. (Gov't's Resp. 6.)

Government's offers of access to these materials.[12] Accordingly, the circumstances in this case cannot support a grant of a Motion for Return of Property.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Return of Property is denied.

An appropriate Order follows.

**BY THE COURT:**

*[signature]*

_____
**R. BARCLAY SURRICK, J.**

---

[12] Defendant presently lives in Florida. He claims that family obligations prevented him from coming to Wilmington to view these materials with his attorney.